IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

Case Number: 4:25-cv-001395

GS HOLISTIC, LLC,

        Plaintiff,

v.

SIGMA IMPACT INC. d/b/a SIGMA WHOLESALE and KAMRUDDIN SOHANI,

        Defendants.
_____/

**COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES**

The Plaintiff, GS HOLISTIC, LLC (hereinafter referred to as "GS"), by and through its undersigned counsel, hereby files this, its Complaint against the Defendants, SIGMA IMPACT INC. d/b/a SIGMA WHOLESALE and KAMRUDDIN SOHANI, and alleges, as follows:

**Jurisdictional and Venue Allegations**

1. This is a civil action against the Defendants for trademark infringement and counterfeiting, under the Lanham Act (15 U.S.C. § 1051 *et. seq.*), and design patent infringement arising under the patent laws of the United States, 35 U.S.C. §§ 1 *et. seq.*

2. This Court has subject matter jurisdiction over the claims in this action that relate to trademark infringement, counterfeiting, and patent infringement pursuant to the provisions of 15 U.S.C. § 1121, and 28 U.S.C. §§ 1331, 1332, and 1338.

3. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) in that the Defendants reside in this district, the cause of action occurred in this district, and a substantial part

of the events or omissions giving rise to these claims occurred in this judicial district, and Defendants have extensive contacts with this judicial district relating to GS's claims. Defendants conduct regular and systematic business transactions in this judicial district, including direct sales to consumers in this judicial district, which violate the intellectual property rights of GS.

## The Parties

4. GS HOLISTIC, LLC is a Delaware Limited Liability Corporation that has its principal place of business at 7162 Beverly Boulevard, #207, Los Angeles, California 90036. GS is the registered owner of the G Pen and Stündenglass trademarks (hereinafter referred to as "GS Brands") in addition to Hookah design patents.

5. SIGMA IMPACT INC. d/b/a SIGMA WHOLESALE (hereinafter referred to as "SIGMA WHOLESALE") is a limited liability company that was formed in Texas and has its principal place of business at 7010 Hardwin Drive Suite B, Houston, Texas 77036. SIGMA WHOLESALE is a citizen of Texas.

6. KAMRUDDIN SOHANI is domiciled in and a resident of Missouri City, Texas, and is *sui juris*. KAMRUDDIN SOHANI is a citizen of Texas and regularly conducts and solicits business in the State of Texas (including this Judicial District). KAMRUDDIN SOHANI is the president and director of, SIGMA IMPACT INC. d/b/a SIGMA WHOLESALE. KAMRUDDIN SOHANI controls and directs the activities, including the infringing activities, of Defendant SIGMA IMPACT INC. d/b/a SIGMA WHOLESALE.

## Facts Common to All Counts

**The History of The G Pen Brand.**

7. Since 2012, GS has marketed and sold products using the well-known trademark "G Pen." The G Pen branded products, such as portable vaporizers and accessories related thereto,

are widely recognized nationally and internationally. Indeed, the G Pen brand is one of the leading companies in the industry, known for the high quality of the products at an achievable price point for all.

8. For nearly twelve years, GS has worked to distinguish the G Pen brand as the premier manufacturer of vaporizers by emphasizing the brand's unwavering use of quality materials and focusing on scientific principles which facilitate a superior smoking experience. G Pen branded products embody a painstaking attention to detail, which is evident in many facets of authentic G Pen branded products. It is precisely because of the unyielding quest for quality and unsurpassed innovation that G Pen branded products have a significant following and appreciation amongst consumers in the United States and internationally.

9. As a result of the continuous and extensive use of the trademark "G PEN," Grenco Science was granted both valid and subsisting federal statutory and common law rights to the G Pen trademark.

10. In 2016, Grenco Science assigned to GS all the rights associated with the G PEN trademark and other marks associated with the different products sold by GS. The assignment to GS was duly recorded with the United States Patent and Trademark Office on May 24, 2016. True and correct copy of the assignments between Grenco Science and GS is attached hereto and marked as Exhibit "A."

    a. GS is the rightful owner of United States trademarks, which are registered on the Principal Register and have become incontestable within the meaning of Section 15 of the Lanham Act, 15 U.S.C. § 1065. The following is a list of GS's relevant federally registered trademarks:

    b. GS is the rightful owner of United States trademarks, which are registered on the Principal Register. The following is a list of GS's relevant federally registered trademarks:

   c. U.S. Trademark Registration Number 4,390,645 for the standard character mark "G PEN" in association with goods further identified in the registration in international class 010.

   d. U.S. Trademark Registration Number 5,368,594 for the stylized word mark "G PEN" and its logo in association with goods further identified in the registration in international class 010.

   e. U.S. Trademark Registration Number 4,470,963 for the standard character mark "GRENCO SCIENCE" in association with goods further identified in the registration in international class 010.

   f. U.S. Trademark Registration Number 4,616,071 for the standard character mark "GRENCO" in association with goods further identified in the registration in international class 010.

   g. U.S. Trademark Registration Number 4,466,586 for the stylized word mark "G" and its logo in association with goods further identified in the registration in international class 010.

   h. U.S. Trademark Registration Number 5,405,360 for the stylized word mark "G GRENCO SCIENCE" and its logo in association with goods further identified in the registration in international class 010.

   i. U.S. Trademark Registration Number 5,405,361 for the stylized word mark "GRENCO SCIENCE" and its logo in association with goods further identified in the registration in international class 010.

 11. The above U.S. registrations are valid, subsisting and in full force and effect. True and correct copies of the Trademark Registrations are attached hereto and marked as Exhibit "B." Hereinafter, GS utilizes the phrase "G Pen Marks" to refer to, collectively, GS's federally registered, above-listed trademarks. A number of these marks are assigned to GS.

**The G Pen Brand in the United States**

 12. Pursuant to the trademark assignment between Grenco Science, Inc. and GS Holistic, LLC, GS has used the G Pen Marks in commerce throughout the United States, continuously, since 2016, in connection with the manufacturing of vaporizing products.

13. The G Pen Marks are distinctive to both the consuming public and the Plaintiff's trade. GS's G Pen branded products are made from superior materials. The superiority of G Pen branded products is not only readily apparent to consumers, but to industry professionals as well.

14. The G Pen Trademarks and Stündenglass Trademarks are exclusive to GS and appear clearly on GS's G Pen Products respectively, as well as on the packaging and advertisements related to the products. GS has expended substantial time, money, and other resources in developing, advertising, and otherwise promoting and protecting these Trademarks. As a result, products bearing GS's G Pen Trademarks are widely recognized and exclusively associated by consumers, the public, and the trade as being high-quality products sourced from GS.

15. GS's G Pen Products have become some of the most popular of their kind in the world and have also been the subject of extensive unsolicited publicity resulting from their high-quality and innovative designs. Because of these and other factors, the GS brand, the G Pen brand, and GS's G Pen Trademarks are famous throughout the United States.

16. GS has worked to build significant goodwill in the G Pen brand in the United States Since 2016. GS has spent substantial time, money, and effort in developing consumer recognition and awareness of the G Pen brand, via point of purchase materials, displays, through their websites, attending industry trade shows, and through social media promotion.

17. In fact, both G Pen Products have been praised and recognized by numerous online publications, as well as publications directed to the general public.

18. Due to the high quality of the brand and products, GS has collaborated with numerous celebrities and companies to create collaborations for the G Pen products.

19. GS sells its products under both the G Pen Marks to authorized stores in the United

States, including in Texas. GS has authorized approximately 5,000 stores in the United States to sell it G Pen branded products. As such, G Pen branded products reach a vast array of consumers throughout the country.

20. It is because of the recognized quality and innovation associated with the G Pen Marks that consumers are willing to pay higher prices for genuine G Pen products. For example, a G Pen brand vaporizer ranges in price from $70 to $250, while a non-G Pen branded product of equivalent size and technology will usually sell from $11 to $20.

21. It is exactly because of their higher sales value that G Pen branded products are targeted by counterfeiters. The counterfeiters tarnish the G Pen brand by unlawfully selling vaporizers that have identical, or nearly identical, versions of the G Pen Marks affixed to products that are made with inferior or different materials, and tarnish the G Pen brand by unlawfully selling vaporizers that have identical, or nearly identical, versions of the G Pen Marks affixed to products that are made with inferior or different materials, thereby leading to significant illegitimate profits by KAMRUDDIN SOHANI such as the Defendants in the instant case.

22. In essence, the Defendants mislead consumers by selling in their stores low grade products that take a free ride on the goodwill of the G Pen brand, and in turn, the Defendants reap ill-begotten profits. The Defendants' offering for sale of counterfeit G Pen contributes to the complete flooding of the marketplace with G Pen counterfeit products, which results in lost sales and damages to GS and irreparable harm to the G Pen brand's image.

23. The sale of the counterfeit products also cause harm to GS in that legitimate store owners will not purchase authentic G Pen vaporizers when stores selling counterfeit products are selling products which appear to be identical and at half the price which authentic products can be sold.

24. Unfortunately, the current U.S. marketplace is saturated with counterfeit G Pen products– just like those distributed and offered for sale by SIGMA WHOLESALE. As such, GS has been forced to scrupulously enforce its rights in order to protect the G Pen Marks against infringement. By exercising its Enforcement Rights, GS has proactively and successfully policed the unauthorized use of the G Pen Marks and counterfeit G Pen branded products nationwide. GS has had to bear great expense to seek out and investigate suspected counterfeiters in GS's attempt to clean up the marketplace.

**Defendants' Offering for Sale Counterfeit Goods**

25. The Defendants operate a distribution store through which they sell water pipes, cigarettes, electronic cigarettes, vaporizers, tobacco, and other smoking related devices.

26. Nevertheless, the Defendants have offered for sale in commerce the Counterfeit Goods, specifically, the Defendants have offered for sale reproductions, counterfeits, copies and/or colorable imitations of one or more of the G Pen Trademarks (hereinafter the "Counterfeit Marks"), detailed above.

27. The Defendants have offered for sale both counterfeit G Pen products with the Counterfeit Marks, without the consent of GS. In fact, they have offered counterfeit vaporizers bearing imitations of the G Pen Trademarks (hereinafter referred to as "Counterfeit G Pen Goods"), which were not made or authorized by GS.

28. Nevertheless, the Defendants have offered for sale in commerce the Counterfeit G Pen Goods, specifically, the Defendants have offered for sale reproductions, counterfeits, copies and/or colorable imitations of one or more of the G Pen Marks (hereinafter the "Infringing G Pen Marks"), and one or more of the Stündenglass Marks (hereinafter the "Infringing Stündenglass Marks"), detailed above.

7

29. The Defendants have, without the consent of GS, offered for sale in their store, Counterfeit G Pen Goods.

30. The marks affixed to the Counterfeit Goods that the Defendants have offered for sale are spurious marks which are identical with, or substantially indistinguishable from, the GS Trademarks. The marks on the Counterfeit Goods are in fact counterfeit marks as defined in 15 U.S.C. § 1116(d).

31. Moreover, the products upon which the Counterfeit Marks are affixed are almost identical to authentic products, so the offering for sale of the almost identical products with indistinguishable marks causes confusion in the marketplace among consumers.

32. In the ongoing investigation into the sales of counterfeit products bearing both the fake G Pen Marks, SIGMA WHOLESALE offered for sale Counterfeit Goods.

33. Specifically, on June 30, 2024, GS's investigator attended SIGMA WHOLESALE's location, which was open to the public, and observed that it had an excess of G Pen vaporizers, specifically the Snoop Dog variety which have been long discontinued by GS, but nevertheless were never made in the colors offered by the Defendants. They appeared to display each of the G Pen Marks. The investigator purchased three Snoop Dog G Pens with G Pen Marks affixed to it, from SIGMA WHOLESALE, for a cost of $24.99, charged to the account of GS's investigator. Upon physical inspection by GS' investigator, the product was found to be a counterfeit product in that it displayed the Infringing Marks.

34. Attached hereto as Exhibit "C" are the photographic examples of the Defendants use of the Infringing Marks, taken from the Counterfeit Good. As seen in the pictures, the Counterfeit Good contained all seven of GS's marks on it: U.S. Trademark Registration Number 4,390,645; U.S. Trademark Registration Number 5,368,594; U.S. Trademark Registration Number

4,470,963; U.S. Trademark Registration Number 4,616,071; U.S. Trademark Registration Number 4,466,586; U.S. Trademark Registration Number 5,405,360; and U.S. Trademark Registration Number 5,405,361. The Defendants use of the Counterfeit Marks is substantially indistinguishable, if not identical, to GS's Marks.

35. KAMRUDDIN SOHANI authorized, directed, and/or participated in KAMRUDDIN SOHANI's offer for sale, in commerce, of the Counterfeit Goods. KAMRUDDIN SOHANI's acts were a moving, active, and conscious force behind SIGMA WHOLESALE's infringement of the GS Trademarks.

36. The Defendants' use of the counterfeit GS Trademarks began after the registration of the GS Trademarks. Neither GS, nor any of its authorized agents, have consented to the Defendants' use of the GS Trademarks, or any use of reproductions, counterfeits, copies and/or colorable imitations thereof.

37. The unauthorized offering for sale by SIGMA WHOLESALE, under the authority, direction and/or participation of KAMRUDDIN SOHANI, of the Counterfeit Goods was an unlawful act in violation of the Lanham Act, 15 U.S.C. § 1114 and 15 U.S.C. § 1125(a).

38. The offer for sale by the Defendants of the Counterfeit Goods bearing the Infringing Marks has caused GS to suffer losses and is likely to cause damage to the goodwill and reputation associated with the GS Trademarks, which are owned by GS.

39. SIGMA WHOLESALE's use of the GS Marks includes displaying to offer for sale unauthorized copies of Counterfeit GS branded products. SIGMA WHOLESALE's offering to sell the GS counterfeit products, bearing the Infringing Marks in this manner, was, and is, likely to cause confusion or to cause mistake and/or deceive consumers who purchase the Counterfeit Goods.

9

40. SIGMA WHOLESALE used images and names identical to or confusingly similar to the GS Marks, to confuse customers and aid in the promotion and sales of Counterfeit Goods under the Infringing Marks. The Infringing Marks affixed to the Counterfeit Goods SIGMA WHOLESALE has offered for sale are confusingly identical or similar to the GS Marks that GS affixes to its Gravity Infusers and vaporizer products. The Counterfeit Goods' and GS's goods' appear to be the same physical products, with the same identical or confusingly similar marks as GS products - such that copies of the GS marks appear on the Counterfeit Goods.

| Authentic (discontinued) product | Counterfeits offered for sale by Defendants |
|---|---|
|   |   |

41. The Defendants' Counterfeit Goods travel in identical channels of trade and are sold to identical consumers as GS's genuine goods.

42. The vaporizer products that SIGMA WHOLESALE sells and offers for sale under the Infringing Marks are made of substantially inferior and/or different materials as compared to genuine GS brand products.

43. SIGMA WHOLESALE has offered for sale under the Counterfeit Marks the Counterfeit Goods for retailers to purchase and offer to the public.

44. SIGMA WHOLESALE has intentionally caused or knowingly facilitated the

infringement of the GS Marks by third party retailers.

45. SIGMA WHOLESALE has marketed, advertised, and promoted its Counterfeit Goods under the Infringing Marks through point of purchase displays, and via social media promotion.

46. SIGMA WHOLESALE and KAMRUDDIN SOHANI's infringing acts as alleged herein have caused and are likely to cause confusion, mistake, and deception among the relevant consuming public as to the source or origin of the Counterfeit Goods sold by SIGMA WHOLESALE, and are likely to deceive, and have deceived, the relevant consuming public into mistakenly believing that the Counterfeit Goods sold by SIGMA WHOLESALE originate from, and are associated or affiliated with, or otherwise authorized by GS.

47. SIGMA WHOLESALE and KAMRUDDIN SOHANI's acts are willful with the deliberate intent to trade on the goodwill of the G Pen Marks, cause confusion and deception in the marketplace, and divert potential sales of the Plaintiff's vaporizers to SIGMA WHOLESALE. The Defendants, as both distributors and merchants of tobacco shop goods, are held to the standard of having specialized knowledge in the tobacco shop industry. It is readily apparent that the Defendants, as merchants, have failed to conduct any reasonable inquiry into the authenticity of the goods sold by their shop and have acted with at least willful blindness as to GS' intellectual property rights in the G Pen marks. Here, the Defendants offered for sale at least three counterfeit products purporting to be G Pen vaporizers for $24.99.00 each whereas an authentic G Pen brand vaporizer ranges in price from $70 to $250. Moreover, the Defendants were offering counterfeits for sale in colors never made by the Plaintiff. The only version of this product ever made by the Plaintiff was in a particular shade of navy blue.

48. SIGMA WHOLESALE and KAMRUDDIN SOHANI's acts have caused damage

and immediate irreparable harm to GS, the G Pen Marks, and to its valuable reputation and goodwill with the consuming public for which GS has no adequate remedy at law.

49. As a proximate result of the unfair advantage accruing to KAMRUDDIN SOHANI and SIGMA WHOLESALE's business from deceptively trading on GS's advertising, sales, and consumer recognition KAMRUDDIN SOHANI and SIGMA WHOLESALE have made profits and gains to which they are not in law or equity entitled.

50. The injuries and damages sustained by GS has been directly and proximately caused by SIGMA WHOLESALE and KAMRUDDIN SOHANI's offers for sale of their goods bearing infringements or counterfeits of the G Pen Marks.

51. SIGMA WHOLESALE has contributorily caused harm to GS through third party retailer sales of goods bearing the Infringing Marks distributed to them by SIGMA WHOLESALE.

52. Through such business activities, KAMRUDDIN SOHANI and SIGMA WHOLESALE purposefully derived direct benefits from their interstate commerce activities by targeting foreseeable purchasers in the State of California, and in doing so, have knowingly harmed GS.

53. Furthermore, the sale and distribution of Counterfeit Goods by SIGMA WHOLESALE has infringed upon the above-identified federally registered trademarks.

54. The spurious marks or designations used by SIGMA WHOLESALE in interstate commerce are identical with, or substantially indistinguishable from, the G Pen Marks on goods covered by the G Pen Marks. Such use therefore creates a false affiliation between SIGMA WHOLESALE, GS, and the G Pen Marks.

55. Due to the actions of KAMRUDDIN SOHANI, and SIGMA WHOLESALE, GS has needed to retain the undersigned counsel and pay the costs of bringing an action forward.

KAMRUDDIN SOHANI, and SIGMA WHOLESALE should be responsible for paying GS's reasonable costs of the action.

56. KAMRUDDIN SOHANI and SIGMA WHOLESALE's acts have damaged, and will continue to damage GS, and GS has no adequate remedy at law.

57. Moreover, SIGMA WHOLESALE and KAMRUDDIN SOHANI's wrongful acts will continue unless enjoined by the Court. Accordingly, KAMRUDDIN SOHANI and SIGMA WHOLESALE must be restrained and enjoined from any further counterfeiting or infringement of the G Pen Marks.

58. As a proximate result of the unfair advantage accruing to KAMRUDDIN SOHANI and SIGMA WHOLESALE's business from deceptively trading on GS's advertising, sales, and consumer recognition, KAMRUDDIN SOHANI, and SIGMA WHOLESALE have made profits and gains to which they are not in law or equity entitled.

59. The injuries and damages sustained by GS has been directly and proximately caused by SIGMA WHOLESALE, JOSE SIGMA, and KAMRUDDIN SOHANI's offers for sale of their goods bearing infringements or counterfeits of the GS Marks.

60. Through such business activities, KAMRUDDIN SOHANI and SIGMA WHOLESALE purposefully derived direct benefits from their commerce activities by targeting foreseeable purchasers in the State of Texas, and in doing so, have knowingly harmed GS.

61. Furthermore, the sale and distribution of Counterfeit Goods by SIGMA WHOLESALE has infringed upon the above-identified federally registered trademarks.

62. The spurious marks or designations used by SIGMA WHOLESALE in commerce are identical with, or substantially indistinguishable from, the GS Marks on goods covered by the GS Marks. Such use therefore creates a false affiliation between SIGMA WHOLESALE, GS, and

the GS Marks.

63.     Due to the actions of KAMRUDDIN SOHANI, and SIGMA WHOLESALE, GS has needed to retain the undersigned counsel and pay the costs of bringing an action forward. KAMRUDDIN SOHANI, and SIGMA WHOLESALE should be responsible for paying GS's reasonable costs of the action.

64.     KAMRUDDIN SOHANI, and SIGMA WHOLESALE's acts have damaged, and will continue to damage GS, and GS has no adequate remedy at law.

65.     Moreover, SIGMA WHOLESALE and KAMRUDDIN SOHANI's wrongful acts will continue unless enjoined by the Court.  Accordingly, KAMRUDDIN SOHANI, and SIGMA WHOLESALE must be restrained and enjoined from any further counterfeiting or infringement of the GS Marks.

## Count One
### Federal Trademark Infringement and Counterfeiting, 15 U.S.C. § 1114
(SIGMA WHOLESALE and KAMRUDDIN SOHANI)

66.     The Plaintiff avers Paragraphs 1 through 65, which are stated above and incorporate the allegations therein, as though they are fully restated in this Count by reference.

67.     GS owns the federally registered GS Trademarks, as set forth in more detail in the foregoing paragraphs.

68.     The Defendants, without authorization from GS, have used in commerce a spurious designation that is identical with, or substantially indistinguishable from, the GS Trademarks on the same goods covered by the GS Trademarks.

69.     The Defendants' unauthorized use of counterfeit marks of the registered GS Trademarks on and in connection with the Defendants' offer for sale in commerce is likely to cause confusion or mistake in the minds of the public.

70. The Defendants' conduct as alleged herein is willful and intended to cause confusion, mistake, or deception as to the affiliation, connection, or association of the Defendants, with GS or the GS Trademarks.

71. The Defendants' acts constitute willful trademark infringement in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114.

72. The Defendants' actions constitute the use by the Defendants of one or more "counterfeit mark(s)" as defined in 15 U.S.C. § 1116(d)(1)(B).

73. By reason of the foregoing, the Plaintiff is entitled to, among other relief, injunctive relief, an award of statutory damages, and costs of the action under Sections 34 and 35 of the Lanham Act, 15 U.S.C. §§ 1116, 1117, together with prejudgment and post-judgment interest.

### Count Two
### Federal False Designation of Origin and Unfair Competition, 15 U.S.C. § 1125(a)
(SIGMA WHOLESALE and KAMRUDDIN SOHANI)

74. The Plaintiff avers Paragraphs 1 through 66, which are stated above and incorporate the allegations therein, as though they are fully restated and incorporated in this Count by reference.

75. GS owns the federally registered GS Trademarks, as set forth in more detail in the foregoing paragraphs.

76. The Defendants, without authorization from GS, have used in commerce spurious designations that are identical with, or substantially indistinguishable from, the GS Trademarks on the same goods covered by the GS Trademarks.

77. The Defendants' unauthorized use of counterfeit marks of the registered GS Trademarks on and in connection with the Defendants' offers for sale in commerce is likely to cause confusion or mistake in the minds of the public.

78. The Defendants' unauthorized use in commerce of the GS Trademarks as alleged herein constitutes use of a false designation of origin and misleading description and representation of fact in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

79. The Defendants' conduct as alleged herein is willful and is intended to, and is likely to, cause confusion, mistake, or deception as to the affiliation, connection, or association of the Defendants, with GS or the GS Trademarks.

80. The Defendants' conduct as alleged herein is causing immediate and irreparable harm and injury to GS, and to the goodwill and reputation of the GS Trademarks. Moreover, it will continue to cause damage to GS and confuse the public unless enjoined by this Court.

81. GS has no adequate remedy at law.

82. By reason of the foregoing, the Plaintiff is entitled to, among other relief, injunctive relief, an award of statutory damages, and costs of the action under Sections 34 and 35 of the Lanham Act, 15 U.S.C. §§ 1116, 1117, together with prejudgment and post-judgment interest.

## Prayer For Relief

WHEREFORE, the Plaintiff, GS HOLISTIC, LLC, respectfully requests the following relief against the Defendants, as follows:

1. With regard to Plaintiff's Count I for trademark infringement:

    a. Disgorgement of profits under 15 U.S.C. § 1117(a);

    b. Treble damages under 15 U.S.C. § 1117(b);

    c. Statutory damages under 15 U.S.C. § 1117(c);

    d. Costs of suit under 15 U.S.C. § 1117(a);

    e. Find this case to be an exceptional case;

    f. Award GS HOLISTIC LLC its reasonable attorneys' fees and costs;

g. Joint and several liability for KAMRUDDIN SOHANI, and other officers, and directors, for the knowing participation in the counterfeiting activities of SIGMA IMPACT INC;

h. Preliminarily and permanently enjoining SIGMA IMPACT INC. and its agents, employees, officers, directors, owners, representatives, successor companies, related companies, and all persons acting in concert or participation with it from:

   i. The import, export, making, manufacture, reproduction, assembly, use, acquisition, purchase, offer, sale, transfer, brokerage, consignment, distribution, storage, shipment licensing, development, display, delivery, marketing, advertising or promotion of the counterfeit GS product identified in the Complaint and any other unauthorized GS product, counterfeit, copy or colorful imitation thereof;

i. Pursuant to 15 U.S.C. § 1116(a), directing SIGMA IMPACT INC. to file with the Court and serve on the Plaintiff's within thirty (30) days after issuance of an injunction, a report in writing and under oath setting forth in detail the manner and form in which SIGMA IMPACT INC. has complied with the injunction;

j. For an order from the Court requiring that the Defendants provide complete accountings and for equitable relief, including that the Defendants disgorge and return or pay their ill-gotten gains obtained from the illegal transactions entered into and/or pay restitution, including the amount of monies that

    should have been paid if the Defendants had complied with their legal obligations, or as equity requires;

  k. For an order from the Court that an asset freeze or constructive trust be imposed on all monies and profits in the SIGMA IMPACT INC.'s possession, which rightfully belong to the Plaintiff;

  l. Pursuant to 15 U.S.C. § 1118 requiring that the Defendants and all others acting under the Defendants' authority, at its cost, be required to deliver up to the Plaintiff for destruction all products, accessories, labels, signs, prints, packages, wrappers, receptacles, advertisements, and other material in their possession, custody or control bearing any of the GS Trademarks.

2. With regard to Plaintiff's Count II for false designation and unfair competition:

  a. Disgorgement of profits under 15 U.S.C. § 1117(a);

  b. Treble damages under 15 U.S.C. § 1117(b); and

  c. Costs of suit; and

3. For any other and further relief as the Court may deem just and equitable.

### Demand for Jury Trial

The Plaintiff demands a Jury Trial on all issues so triable.

Date: March 26, 2025

                                                          Respectfully submitted,

                                                          */s/ Sanjay K. Minocha*  
                                                          Sanjay K. Minocha  
                                                          Texas Bar # 24065763  
                                                          Minocha Law Firm  
                                                          3300 Oak Lawn Avenue  
                                                          Suite 700  
                                                          Dallas, Texas 75219  
                                                          Serv604@LegalBrains.com  
                                                          Telephone: 561-232-2222  
                                                          *Attorney for the Plaintiff*